IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TROY SMITH,<br><br>          Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>VENERIO SANTOS, LISA KREBS, and<br>JESSICA KNEBEL,<br><br>          Defendants. | Case No. 17-cv-170-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendants Dr. Venerio Santos, Jessica Knebel, and Wexford Health Sources, Inc. (Docs. 101, 102). Plaintiff Troy Smith has filed a response (Doc. 105) in opposition to the motion. Defendants have filed a reply (Doc. 106). Defendant Lisa Krebs has also filed a motion for summary judgment (Doc. 112), but Smith failed to file a response to that motion.

## BACKGROUND

On February 17, 2017, Smith, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center ("Centralia"), filed a Complaint alleging deliberate indifference in the treatment of his mental health (Docs. 1, 16). The following counts remain pending:

    **Count 3:**    Santos exhibited deliberate indifference to Smith's serious medical needs in violation of the Eighth Amendment by allowing his prescription of high levels of lithium to

| | |
|---|---|
| | continue despite being notified that it was causing his health to deteriorate. |
| **Count 4:** | Wexford exhibited deliberate indifference to Smith's serious medical needs in violation of the Eighth Amendment by maintaining a policy at Centralia of providing deficient medical and mental health staffing and resources. |
| **Count 5:** | Krebs and Knebel exhibited deliberate indifference to Smith's serious medical needs in violation of the Eighth Amendment by carrying out Wexford's policy of providing deficient medical and mental health staffing and resources and redirecting Smith when he spoke to them about his condition instead of addressing his condition themselves. |

Smith had a history of tremors prior to arriving at Centralia (Doc. 102-1, p. 1). On February 19, 2015, he was placed in the infirmary under psych watch for suicidal statements he made to nursing staff (*Id.* at p. 2). He was diagnosed with Bi-Polar Disorder with psychotic features. On February 21, 2015, he met with psychiatrist Dr. J.J. Rodos who prescribed him lithium 450 mg for one month, as well as regular lab tests to check his levels (*Id.* at p. 4). On March 7, 2015, Dr. Rodos continued the prescription for lithium for six months (*Id.* at p. 5).

On March 8, 2015, Smith was evaluated for suicide potential, and the form noted that his hands were shaking (Doc. 102-1, p. 7). He was placed in the infirmary for suicidal thoughts (*Id.* at p. 8). On March 15, 2015, he was evaluated by Dr. Rodos who increased his lithium dose to 600 mg (*Id.* at p. 9). On March 30, 2015, he had labs to check his lithium levels which were within normal range (*Id.* at pp. 10-11). Therapeutic range of lithium is .6 -1.2; Smith's level was 1.0 (*Id.* at p. 11).

On April 16, 2015, Smith complained to mental health worker Lydia Norris that his hands were shaking and that he had the problem for years (Doc. 102-1, p. 15). On

April 25, 2015, he was seen again by Dr. Rodos who kept his lithium dosage the same. On May 20, 2015, he had another lab drawn to check his lithium levels which again were 1.0 and within the normal range (*Id*. at p. 18). On June 6, 2015, Dr. Rodos again evaluated Smith and continued with his dose of lithium (*Id*. at pp. 19-20). Ms. Norris noted that he again complained of tremors and asked for a low bunk permit, but Dr. Rodos told him that Dr. Santos would have to approve the permit (*Id*. at p. 21).

On August 2, 2015, Smith was again seen by Dr. Rodos who continued with his lithium prescription (Doc. 102-1, p. 23). Ten days later, on August 12, 2015, he complained of increased shaking to Dr. Garcia who ordered him referred to a psychiatrist for evaluation (*Id*. at pp. 24-25). Dr. Rodos again saw Smith on August 15, 2015, for an evaluation; he continued with the lithium medication but increased his other medications (*Id*. at pp. 26-27).

On August 20, 2015, Smith presented to the sick call line with tremors, noting that his tremors started after his Klonopin was discontinued (Doc. 102-1, p. 28). He also requested a low bunk permit (*Id*.). On August 23, 2015, he saw Dr. Santos for his tremors which Smith associated with his Klonopin (*Id*. at p. 29; 102-2, p. 4). Dr. Santos provided him with a low bunk permit and ordered labs (Doc. 102-1, p. 29). The labs showed that his lithium levels were 1.2, still within normal range (Doc. 105-4, pp. 8-9). On August 28, 2015, Smith was seen again by Dr. Santos who referred him for a psych evaluation (Doc. 102-1, p. 33). On September 4, 2015, Smith was seen by Ms. Norris, and he again complained of shaking associated with his lack of Klonopin (*Id*. at p. 34). On September 5, 2015, Dr. Rodos continued with lithium (*Id*. at p. 35).

On September 20, 2015, Smith complained of worsening shakes. The nurse noted

that his hands were shaking while he tried to take his medications, spilling his water (Doc. 102-1, p. 36). He was referred to Dr. Santos, who saw him on September 21, 2015, and referred him back to the psychiatrist (*Id*. at p. 37). On September 26, 2015, Dr. Rodos evaluated Smith and changed some of his medication but kept him on lithium (*Id*. at p. 38). On October 2, 2015, he reported that he felt the recent medication changes were helping (*Id*. at p. 40). On October 22, 2015, his shaking was noted as less severe (*Id*. at p. 41).

On November 21, 2015, Dr. Rodos met with Smith and continued with his medications (Doc. 102-1, p. 43). On November 26, 2015, Smith was brought to the healthcare unit for impaired cognitive function (*Id*. at p. 45). He was scheduled for a live evaluation by Dr. Rodos (*Id*.). The mental health referral notes that his condition was deteriorating, and he was suffering from full body tremors (*Id*. at p. 46). He was admitted to the infirmary per Jessica Knebel, director of nurses, for his tremors and confusion (*Id*. at p. 47). On December 1, 2015, Ms. Norris saw Smith and noted reports of bizarre behavior including shaking uncontrollably and talking to people who were not there (*Id*. at p. 49). Dr. Rodos directed her to place Smith on his next psych line (*Id*.). On December 2, 2015, Dr. Garcia examined Smith and ordered labs, which were taken on December 3, 2015 (*Id*. at pp. 50-51). Also on December 3, Smith was examined by psychiatrist Dr. McCormick who noted that the labs showed his lithium levels as 2.4, which Dr. McCormick noted amounted to lithium toxicity (*Id*. at p. 52). He was immediately sent to St. Mary's Hospital where he was diagnosed with lithium toxicity (*Id*. at p. 53).

As to Smith's claims against Lisa Krebs, Krebs testified that she was the healthcare administrator and monitored the contract between Wexford and IDOC to ensure

compliance, but she did not provide care to any inmates (Doc. 112-1, p. 1). She did not have the authority to overrule treatment decisions or change medications (*Id*. at pp. 1-2). Smith testified that he talked to her once, but he did not remember the date or the topic of the conversation (Doc. 112-2, p. 104). He may have talked to her about medications after leaving suicide watch, but he ultimately did not remember the topic of the conversation or when it took place (*Id*. at pp. 104-105).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014), citing FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of — and then disregards — an excessive risk to inmate health.

*Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

## ANALYSIS

### A. Venerio Santos

The Court finds that Smith fails to point to any evidence in the record from which a jury could find that Dr. Santos acted with deliberate indifference to Smith's lithium levels. Smith acknowledges in his response to the summary judgment motion that evidence of indifference on the part of any defendant other than Wexford "is hard to marshal." (Doc. 105, p. 17). His response does not focus on the care provided by Dr. Santos; he only takes issue with the care provided by Dr. Rodos, who was previously dismissed from this case (Doc. 93). Smith takes issue with assessments that Dr. Rodos made of his mental health, particularly his assessment on November 21, 2015, arguing that Dr. Rodos should have found that his symptoms were consistent with lithium toxicity, rather than rubber stamping Smith's behavior as "appropriate" (Doc. 105, pp. 3, 5). He only mentions Dr. Santos's evaluation of Smith on September 21, 2015, to demonstrate that Dr. Rodos's assessment six days later with improper (Doc. 105, p. 10). He argues that Dr. Santos noted that Smith's hands had been shaking uncontrollably but Dr. Rodos labeled his appearance six days later as appropriate (*Id.*).

Smith does not, however, argue that Dr. Santos acted with deliberate indifference, and the Court finds no evidence of deliberate indifference. The evidence in the record demonstrates that Dr. Santos reviewed Smith's symptoms and ordered a low bunk permit and lab lest. His lithium levels were 1.2, which were within therapeutic levels. He

also referred Smith for an evaluation by a psychiatrist. There is no evidence from which a jury could find that Dr. Santos was aware that Smith was suffering from lithium toxicity or that he was deliberately indifferent in providing him care. To the contrary, he provided him with care and referred him to mental health where he was seen by Dr. Rodos. Section 1983 is based on personal liability and predicated upon fault. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Therefore, "to be liable under [Section] 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). Dr. Santos cannot be held liable for any deliberate indifference on the part of Dr. Rodos, and Smith fails to present evidence that Dr. Santos personally acted with deliberate indifference. Thus, the Court finds that he is entitled to summary judgment.

### B. Jessica Knebel and Lisa Krebs

The Court also finds that Knebel and Krebs are entitled to summary judgment. As to Knebel, Smith included Knebel in his acknowledgement that evidence of indifference "is hard to marshal." (Doc. 105, p. 17). He failed to respond to Krebs's summary judgment motion. There is no evidence in the record that either defendant treated Smith for his tremors. Knebel approved of Smith's admittance into the infirmary on November 30, 2015, after he presented with tremors and confusion (Doc. 102-1, p. 47). There is nothing in the medical records to suggest that she provided treatment to him or was aware of his lithium levels at the time. Similarly, Krebs, as the healthcare administrator, was not involved in Smith's care and could not make decisions regarding care or medications. Smith did testify that he spoke to Krebs on one occasion, but he could not recall the topic of their conversation. There is nothing in the record to suggest that she knew of his

symptoms or that his lithium levels were out of range. Because there is no evidence from which a jury could find that Knebel and Krebs were aware of his lithium levels and acted with deliberate indifference, they are entitled to summary judgment.

   C. **Wexford Health Sources, Inc.**

The Court also finds that Wexford is entitled to summary judgment. Smith argues that Wexford is liable because Dr. Rodos was an employee of Wexford, and the "the indifference of Dr. Rodos on these occasions is the indifference of Wexford" (Doc. 105, pp. 6, 17). As previously stated, Smith makes much of the actions of Dr. Rodos, particularly his findings during an evaluation on November 21, 2015, where Dr. Rodos labeled Smith's behavior "appropriate" when, Smith argues, he was actually displaying symptoms of lithium poisoning (Doc. 105, p. 3). Although Smith argues that Wexford is liable for the actions of Dr. Rodos, Wexford cannot be liable on the basis of *respondeat superior*, or supervisory, liability because it is not recognized under Section 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (*citing Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Wexford can only be held liable for deliberate indifference if an unconstitutional policy, custom, or practice of the corporation caused the constitutional deprivation. *Shields*, 746 F.3d at 796. Smith fails to point to any policy or practice that led to a constitutional deprivation. Accordingly, Wexford is entitled to summary judgment.

CONCLUSION

For the reasons stated above, the summary judgment motions filed by Dr. Venerio Santos, Jessica Knebel, and Wexford Health Sources, Inc. (Docs. 101, 102) and Lisa Krebs (Doc. 112) are **GRANTED**. The Clerk is **DIRECTED** to close the case and enter judgment

accordingly.

**IT IS SO ORDERED.**

**DATED:   March 18, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**